IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA MILLER and REBECCA WYLIE, individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13-cv-3402 |
| WALGREENS, CO., an Illinois corporation, TAKE CARE HEALTH SYSTEMS, INC., a Delaware corporation, and TAKE CARE HEALTH SYSTEMS, LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Linda Miller and Rebecca Wylie, individually on behalf of themselves and all other persons similarly situated, by their attorneys, Jennifer M. Sender, Robert M. Winter, Andrés J. Gallegos, and Catherine A. Cooke of Robbins Salomon & Patt, Ltd., complain of Defendants Walgreens, Co., an Illinois corporation, Take Care Health Systems, Inc., a Delaware corporation, and Take Care Health Systems, LLC, a Delaware limited liability company, as follows:

### COUNT I – AMERICANS WITH DISABILITIES ACT

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. Plaintiffs' claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et sequitur*, Public Law 101-336, 104 Stat. 327, as amended.

2. Venue is proper in this district because Defendants caused and continue to cause injuries to Plaintiffs in this district and Defendants reside in this district.

## THE PARTIES

3. Plaintiff Linda Miller is a paraplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Linda resides in Chicago, Illinois.

4. Plaintiff Rebecca Wylie is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Rebecca resides in Deerfield, Illinois.

5. Defendant Walgreens, Co. ("Walgreens") is an Illinois corporation. Walgreens, through its subsidiaries, owns and operates retail-based health clinics under the service mark "Take Care Clinics" ("Take Care Clinics") inside more than 370 of its Walgreens stores in 18 states and the District of Columbia in the United States of America, doing business and providing family healthcare, including diagnosis and treatment of common illnesses, immunizations, and a series of wellness services, including screenings and monitoring for various chronic health conditions.

6. Defendant Take Care Health Systems, Inc. ("Take Care, Inc."), a subsidiary of Walgreens, is a Delaware corporation doing business in the state of Illinois. Take Care, Inc. operates retail-based health clinics inside more than 370 Walgreens stores in 18 states and the District of Columbia in the United States of America, doing business and providing family healthcare, including diagnosis and treatment of common illnesses, immunizations, and a series of wellness services, including screenings and monitoring for various chronic health conditions.

7. Defendant Take Care Health Systems, LLC. ("Take Care, LLC"), a subsidiary of Walgreens, is a Delaware corporation doing business in the state of Illinois. Take Care, LLC operates retail-based health clinics inside more than 370 Walgreens stores in 18 states and the District of Columbia in the United States of America, doing business and providing family

healthcare, including diagnosis and treatment of common illnesses, immunizations, and a series of wellness services, including screenings and monitoring for various chronic health conditions.

## CLASS ALLEGATIONS

8. Pursuant to Fed. R. Civ. P. 23(a), the Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class the Plaintiffs seek to represent is composed of all disabled persons with ambulatory impairments who depend upon the use of a wheelchair and are unable to obtain healthcare and medical treatment at Walgreens Take Care Clinics because of the failure of Walgreens, Take Care, Inc., and Take Care, LLC (hereinafter collectively referred to as "Defendants") to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

9. The persons in the class are so numerous that joinder of all persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. Approximately 2.7 million disabled people ages 15 and older depend upon the use of wheelchairs in the United States.[1] Plaintiffs are informed and believe that thousands of individuals with ambulatory impairments who depend upon the use of wheelchairs seeking healthcare and medical treatment at Take Care Clinics have suffered and will continue to suffer systemic discrimination.

10. There are common questions of law and fact involved that affect the parties to be represented in that they are all being denied, or will be denied their civil rights of full and equal enjoyment of healthcare and medical treatment at Take Care Clinics, due to the barriers described herein.

---

[1] In the 18 states and territories in which Defendants operate Take Care Clinics, approximately 10 million people are estimated to have ambulatory impairments, defined as a person who has serious difficulty walking or climbing stairs. *See* Erickson, W., Lee, C., von Schrader, S. (2013). *Disability Statistics from the 2011 American Community Survey (ACS)*. Ithaca, NY: Cornell University Employment and Disability Institute (EDI). Retrieved Apr. 17, 2013 from www.disabilitystatistics.org.

11. The claims of the Plaintiffs are typical of the claims of the class because the Plaintiffs are similarly affected by Defendants' failure to provide the legally required access to their healthcare services in the jurisdictions in which they operate throughout the United States.

12. Plaintiffs are adequate class representatives because they are directly impacted by Defendants' failure to provide access to their healthcare services, facilities and equipment in the jurisdictions in which they operate throughout the United States. The interests of the Plaintiffs are not antagonistic to or otherwise in conflict with the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class actions and class action civil rights claims.

13. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or failed to act on grounds applicable to the class as a whole, making final declaratory and injunctive relief for the class as a whole superior to all other methods of disposition.

14. Class certification is appropriate under Fed. R. Civ. P. 23 (b)(3) because questions of law and fact common to class members predominate over other available methods for the fair and efficient adjudication of this litigation.

15. Upon information and belief, the interests of members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute an action because the amounts at stake for individuals, while significant, are relatively small for most or all of the class members contrasted with the costs of prosecution. Concentrating litigation in a single forum will promote judicial efficiency by resolving common questions of law and fact in a single forum instead of across multiple courts.

16. A class action would be manageable. Individualized litigation presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far

fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. References to Plaintiffs shall be deemed to include each named Plaintiff and each member of the class, unless otherwise indicated.

## DEFENDANTS' CONDUCT

17. Access to high-quality, convenient, and affordable medical treatment, both for acute conditions and routine monitoring of chronic conditions, is critical to maintaining overall health. Take Care Clinic's certified nurse practitioners and physician assistants can diagnose, treat and write prescriptions when medically appropriate for common family illnesses such as strep throat and ear, eye, sinus, bladder and bronchial infections, among other illnesses and conditions; provide walk-in physicals for adolescents, among other medical and wellness services; and offer affordable and convenient treatment to patients without an appointment inside neighborhood Walgreens pharmacy stores. Full and equal access to health care and medical treatment is critical for persons with disabilities. In an October 2011 published study in the Disability and Health Journal comparing health disparities between persons in the U.S. with no disabilities and those with physical disabilities (and cognitive limitations), it was revealed that individuals with physical disabilities had higher prevalence rates for 7 chronic diseases than those with no disability when adjusted for age.[2] Compared to adults without disability, those with physical disabilities experienced more cardiac disease, diabetes, stroke, arthritis and asthma, as well as higher blood pressure and cholesterol levels. The study also noted that persons with

---

[2] *See* A. Reichard, Ph.D. et al., *Health Disparities among Adults with Physical Disabilities or Cognitive Limitations Compared to Individuals with No Disabilities in the United States*. Disability and Health Journal, Vol. 4, Issue 4, October 2011, pp. 59-67. Available at http://www.disabilityandhealthjnl.com/.

I7964806                                                    5

disabilities are far less likely to receive preventive screenings.[3] A main reason for the lack of access to preventative screenings can be attributed to the pervasive existence of access barriers – i.e., architectural, programmatic, communication and other barriers, to include the lack of (disability-specific) cultural competence among healthcare providers.

18. Defendants have a pattern and practice of failing to provide full and equal access to their healthcare services to ambulatory impaired individuals who depend upon the use of wheelchairs who are seeking healthcare services by failing to remove architectural barriers that prevent full and equal enjoyment of, and access to its services, applying eligibility criteria that screen out or tend to screen out a class of individuals with disabilities from fully and equally enjoying their healthcare services, and failing to make reasonable modifications to their policies, practices and procedures to ensure that disabled people with ambulatory impairments who depend upon the use of wheelchairs are provided with equal access to the facilities, equipment and services that Take Care Clinics provide to their customers.

19. As a consequence of the aforesaid conduct, Defendants do not provide full and equal access for disabled people with ambulatory impairments who use wheelchairs. Defendants' employees and staff members are not able to address these barriers and provide healthcare and wellness services on an equal basis to disabled persons with ambulatory impairments who depend on the use of wheelchairs, and thus such disabled persons are unable to secure comprehensive health care and medical treatment offered by the Defendants that is readily available to non-disabled persons without ambulatory impairments.

20. Defendants do not provide, and deny and continue to deny, access for disabled individuals with ambulatory impairments who depend upon the use wheelchairs by creating and failing to remove access barriers in the following ways:

---

[3] *Id*. at p. 65.

      a.      The examination tables do not lower to facilitate the transfer of disabled ambulatory impaired persons from their wheelchairs onto the examination tables;

      b.      No safe means are provided to lift disabled ambulatory impaired persons from their wheelchairs onto examination tables, such as portable lift systems or fixed overhead lift systems;

      c.      Scales to monitor weight are not accessible to ambulatory impaired persons in wheelchairs and the examination rooms are not equipped with wheelchair accessible weight scales which would permit weight monitoring of disabled persons with ambulatory impairments;

      d.      Disabled persons with ambulatory impairments who depend upon the use of wheelchairs are turned away from facilities or dissuaded from seeking healthcare and wellness services from Take Care Clinics when they inquire telephonically about the availability of services for disabled persons who depend on the use of wheelchairs.

      e.      Defendants otherwise have denied access to disabled ambulatory impaired individuals who depend upon the use of wheelchairs.

21.     The pervasive barriers to access described above make it more difficult and expensive for disabled persons with ambulatory impairments who use wheelchairs to receive adequate medical and wellness screening and care. Defendants' failure to remove such access barriers throughout Take Care Clinics prevents full and equal access, subjects disabled people with ambulatory impairments who use wheelchairs to embarrassing, humiliating, and frustrating experiences, and increases the likelihood that they will not be able to secure medical and wellness services that are available to people without ambulatory impairments.

22.     Each Walgreens Take Care Clinic is a public accommodation that is covered by Title III of the ADA. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

## EXPERIENCES OF THE NAMED PLAINTIFFS

23.     Linda Miller is a person with an ambulatory impairment. Linda has been living with the effects of polio, resulting in paraplegia. She utilizes a manual wheelchair. Persons living with the effects of polio are often at increased risk of secondary conditions leading to the decline

of health, such as urinary tract infections, pressure sores, and obesity. Due to the increased prevalence of such secondary conditions, it is important that Linda monitor her health, particularly her weight. Linda is sometimes able to independently transfer in and out of her wheelchair depending on the height of the surface, but if it is too high, she requires assistance. For her safety, she will not permit anyone to lift her unless they have been properly trained. On or about March 15, 2013, Linda called the Walgreens Take Care Clinic's toll free customer service telephone number to inquire whether she could obtain wellness or physical exams at its clinics. After explaining her physical condition and limitations in her ability to independently transfer out of her wheelchair, the Defendants' employee said that the Take Care Clinic facilities were accessible: she would be able to access the examination rooms because they were large enough to accommodate a wheelchair; the examination tables are height adjustable; and although they do not have lift equipment, the clinics' staff would be able to help Linda transfer from her wheelchair onto the examination table. The employee then said she did not believe any of the Take Care Clinics had weight scales to accommodate a wheelchair, but suggested that Linda visit any of the Take Care Clinics. On April 13, 2013, Linda visited the Take Care Clinic at 11 East 75th Street in Chicago, Illinois, which is approximately 5 miles from her house, and requested a wellness examination and to monitor her weight. Linda spoke to the Take Care Clinic's nurse practitioner on duty, who explained that the examination table was not height adjustable and they did not have any lift equipment to assist Linda in transferring from her wheelchair onto the examination table. The nurse practitioner told Linda she would have to independently transfer onto the examination table or bring someone with her to help her transfer, as there was no staff available to lift Linda or assist her with the transfer. The nurse practitioner also informed Linda that the clinic did not have any wheelchair accessible weight scale, and therefore there was no way to obtain her weight. As a result of the clinic's failure to have accessible equipment or

properly trained personnel, Linda was unable to avail herself of Defendants' services to obtain a wellness examination and is not able to monitor her weight and other health conditions. If Take Care Clinics were capable of providing accessible healthcare services to persons with ambulatory impairments who rely upon the use of wheelchairs, Linda would return to the clinic to utilize those services.

24. Rebecca Wylie is a person with an ambulatory impairment. Rebecca has been living with the effects of transverse myelitis since she was 7 years old, affecting her 3rd cervical vertebra, resulting in quadriplegia. She utilizes a power wheelchair. Rebecca is not able to independently transfer from her wheelchair onto any surface and she requires the use of lift equipment or must be lifted. Rebecca is prone to urinary tract infections as a result of her need to intermittingly cathe, and thus having access to convenient and affordable healthcare services is important to her. There are Walgreens stores with Take Care Clinics inside of them nearby Rebecca's house in Deerfield, Illinois at 655 Elm Place in Highland Park, and within 5 minutes of her graduate housing in downtown Chicago, Illinois at 79 West Monroe Street. On April 12, 2013, Rebecca called the Walgreens Take Care Clinic's toll-free customer service telephone number to inquire whether she could be treated at any of its Take Care Clinics. Rebecca spoke with a Take Care Clinic employee and asked what Take Care Clinics' health screenings entailed and whether the clinics were accessible or had the capability of seeing patients in a wheelchair. The Take Care Clinic employee explained that the heath screening included, among other things, measuring a patient's height and weighing the patient.. Rebecca asked the Take Care Clinic employee if the examination tables were height adjustable, but the employee did not know. The employee advised that in order to measure her height, Rebecca should be transferred to the examination table, but that every other test could be performed while she remained in her wheelchair. Rebecca then asked whether the Take Care Clinics' personnel were trained in lifting

I7964806 9

patients, to which the employee indicated she did not know, but would call her back or have someone with an answer to that question call her back. Approximately 2 hours later, the nurse practitioner at the Highland Park Take Care Clinic called Rebecca. Rebecca briefly explained her disabilities and asked if the clinic had lift equipment that could be used to transfer her onto the examination table. The nurse practitioner explained that they did not have that capability, and because she was generally the only one at that Take Care Clinic, they did not want to be held liable for transferring Rebecca onto the examination table. Rebecca asked how the clinic weighed patients in wheelchairs, and the nurse practitioner confirmed that the clinic could not weigh patients in wheelchairs as it does not have wheelchair accessible weight scales. The nurse practitioner suggested that Rebecca seek treatment at medical clinics other than Take Care Clinics, such as Highland Park Hospital, North Shore University, Marionjoy Rehabilitation Hospital, or the Rehabilitation Institute of Chicago for any health care services she may need. Rebecca explained that she was not only interested in health screenings, but also wanted to utilize the Take Care Clinics' services when her primary doctor's office was closed or would require appointments in advance. The nurse practitioner reiterated that Rebecca should be referred to a specialty clinic or hospital for her medical care. As a result of Take Care Clinics' failure to have accessible equipment or properly trained personnel, Rebecca was unable to avail herself of Defendants' services to obtain a wellness examination to monitor her weight and other health conditions. If Take Care Clinics were capable of providing healthcare services for persons with ambulatory impairments who rely upon the use of wheelchairs, Rebecca would utilize Defendants' clinics for those services.

## THE STATUTE AND REGULATIONS

25. At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, (the "ADA"), and its

implementing regulations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

- a. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

- b. It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

- c. It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

- d. It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b) (2)(A)(i); 28 C.F.R. § 36.301(a).

- e. It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

- f. It shall be discriminatory to fail to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b) (2)(A)(iv); 28 C.F.R. § 36.304(a).

## **DEFENDANTS' VIOLATIONS**

26. Defendants' acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

   a. Defendants have discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendants.

   b. Defendants have discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Take Care Clinics.

   c. Defendants have discriminated against Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals with no ambulatory impairments.

   d. Defendants have discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination tables where such criteria is not necessary for the provision of healthcare and wellness monitoring services.

   e. Defendants have discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford their goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of their goods, services or facilities.

   f. Defendants have otherwise discriminated against Plaintiffs and the class members.

27. Defendants' conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Defendants will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Plaintiffs and the members of the class for which Plaintiffs and the class will have no adequate remedy at law. Therefore, pursuant to

Section 308 of the ADA (42 U.S.C. § 12188), Plaintiffs and members of the class are entitled to injunctive relief.

28. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

a. A preliminary injunction and a permanent injunction, prohibiting Defendants from violating the ADA, 42 U.S.C. § 12181, *et seq.*, and compelling Defendants to comply with the ADA;

b. A declaration that Defendants are operating in a manner which discriminates against disabled individuals who are ambulatory impaired who depend upon the use of wheelchairs and which fails to provide access for persons with disabilities as required by law;

c. An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), and appointing Plaintiffs as class representatives and their attorneys as class counsel;

d. An award of attorneys' fees and costs;

e. Such other relief as the Court deems just.

## COUNT II – REHABILITATION ACT

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). Plaintiffs' claims in Count II arise under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended.

2-7. Plaintiffs incorporate by reference paragraphs 2 to 7 of Count I.

8. Pursuant to Fed. R. Civ. P. 23(a), the Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class the Plaintiffs seek to represent is composed of all disabled persons with ambulatory impairments who depend upon the use a wheelchair and are unable to obtain healthcare and wellness services and care at Take

Care Clinics, because of the failure of Defendants to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

9-21.   Plaintiffs incorporate by reference paragraphs 9 to 21 of Count I.

22.   Defendants receive federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and are subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

23-24.   Plaintiffs incorporate by reference paragraphs 23 to 24 of Count I.

25.   At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.3(h), which provide in pertinent part as follows:

   a.   "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a)

   b.   An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(l)(4).

   c.   "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services, and any part of the corporation receives federal financial assistance. 29 U.S.C. § 794(b)(3)(A)(i) and (ii).

   d.   "Federal financial assistance" means "any grant, loan, contract…or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of…[f]unds." 45 C.F.R. § 84.3(h).

   e.   "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 45 C.F.R. § 84.21.

    f.    "Accessibility. A recipient shall operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons." 45 C.F.R. § 84.22.

    g.    "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services…(3) Provide a qualified handicapped person with benefits or services that are not as effective (as defined in § 84.4(b)) as the benefits or services provided to others…(4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

26.    Defendants' acts and omissions alleged herein violated and continue to violate the Rehabilitation Act of 1973 and its implementing regulations in one or more or all of the following manners:

    a.    Defendants have discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendants.

    b.    Defendants have discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Take Care Clinics.

    c.    Defendants have discriminated against Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals with no ambulatory impairments.

    d.    Defendants have discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination tables where such criteria is not necessary for the provision of healthcare and wellness monitoring services.

    e.    Defendants have discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford their goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of their goods, services or facilities.

  f. Defendants have otherwise discriminated against Plaintiffs and the class members.

27. Section 505(a)(2) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of Section 504 of the Rehabilitation Act of 1973. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

28. Defendants' conduct has inflicted injury and damages upon Plaintiffs, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

29. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to Section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(b).

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

  a. A declaration that Defendants are operating in a manner which discriminates against disabled individuals who are ambulatory impaired who depend upon the use of wheelchairs and which fails to provide access for persons with disabilities as required by law;

  b. An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), and appointing Plaintiffs as class representatives and their attorneys as class counsel;

  c. An award of compensatory monetary damages;

  d. An award of attorneys' fees and costs;

  e. Such other relief as the Court deems just.

          REBECCA WYLIE and LINDA MILLER,
          individually on behalf of themselves and all
          other persons similarly situated, Plaintiffs

        By: /s/ Jennifer M. Sender
           One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Robert M. Winter (ARDC No. 3122228)
Andrés J. Gallegos (ARDC No. 6212168)
Catherine A. Cooke (ARDC No. 6289263)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
rwinter@rsplaw.com
agallegos@rsplaw.com
ccooke@rsplaw.com